T. H. IRWIN, Appellant, v. G. E. DEMING, Appellee.

Trusts: EQUITY: JURISDICTION: TRANSFER OF CAUSE: PREJUDICE. A
1  suit to impress a trust upon notes which had been wrongfully substituted for the original notes belonging to plaintiff, and without his knowledge, to which defendant filed a counterclaim setting up his ownership and right of possession, was triable in equity; but as it was tried to the court after having been improperly transferred to the law docket, and all the evidence was received without objection and contained in the abstract on which the appeal was submitted, the transfer was not ground for reversal, unless upon a trial *de novo* it is found that a different result should have been reached.

Trusts: IDENTITY OF INSTRUMENTS: EVIDENCE. In a suit to im-
2  press a trust upon certain notes payable to defendant, but delivered to plaintiff, the evidence is held sufficient to identify notes

previously sold to defendant, to replace which the notes in suit were taken.

**Bills and notes:** DELIVERY: EVIDENCE. The undisputed testimony of the purchaser of notes that the transaction took place at a certain bank where he bought the same with others from the cashier; that the notes were there present and that he saw the signatures of the makers and indorsement of the payee; that he paid for the same by a check on the bank and left them with other papers in his private box at the bank, with authority to the cashier to collect the same, is sufficient proof of delivery, in the absence of any notice of fraud on the part of the cashier, although there is no showing that he actually took the notes into his own hands or personally placed them in his private box.

**Same:** *Bona fide* PURCHASER: EVIDENCE: TRUSTS. On an issue as to whether plaintiff purchased certain notes before maturity, his undisputed evidence of the transaction and of the date at which he purchased and paid for the same is not overcome by the other circumstances, and he is held to have been a *bona fide* purchaser and to have the notes wrongfully substituted therefor impressed with a trust in his favor.

*Appeal from Lucas District Court.*—HON. D. M. ANDERSON, Judge.

SATURDAY, APRIL 10, 1909.

PLAINTIFF brought his suit in equity to impress a trust upon certain promissory notes, drawn payable to defendant as payee and delivered to plaintiff. The defendant filed a counterclaim, setting up his ownership and right of possession to the notes. Upon motion of the defendant the cause was transferred to the law side of the docket, over the objection of the plaintiff. There was a trial to the court without a jury. Judgment for the defendant, and plaintiff appeals.—*Reversed.*

*W. W. Bulman,* for appellant.

*J. C. Mitchell* and *Hickman & Wells,* for appellee.

WEAVER, J.—On July 1, 1904, O. M. Dysart and G. L. Dysart made and delivered to the Percheron Importing Company of Chariton, Iowa, three promissory notes of. $400 each, maturing in consecutive order one, two and three years from date, with interest payable annually. These notes were by the payee indorsed in blank and transferred to, or deposited with, the First National Bank of Chariton, and in April, 1905, they were by the bank, acting by its cashier, F. R. Crocker, sold and delivered to the defendant herein, G. E. Deming. The latter was a customer of the bank,. and in the habit of purchasing negotiable paper through Crocker. He had a private box in the bank, where he kept valuable papers, and, after purchasing the notes in question, deposited them with others in this box. He gave Crocker a key to the box, and authorized him to attend to the collection of the paper kept there. So far as appears from the record, Deming never saw the notes after leaving them in the box. The plaintiff, Irwin, was also a customer of the bank, keeping a private box therein, and dealing with the bank and Crocker much after the manner of Deming as above stated. He also gave Crocker a key to his box, and authorized him to collect the notes deposited there. In June, 1905, the evidence tends to show that Crocker abstracted the notes from Deming's box, and negotiated them to Irwin, who purchased without notice of any right or equity of Deming therein. Irwin, following his custom, left the notes in his box, authorizing Crocker to attend to their collection, and, so far as appears, never again saw the paper. The first note and interest on all of them falling· due and being unpaid, Deming spoke to Crocker about making collection, or obtaining security from the makers, but does not appear to have followed the matter up to ascertain what, if anything, was done in the matter. Later Crocker entered a credit of several hundred dollars in Deming's deposit account as the proceeds of ·a part col-

lection of the claim, though in fact no such collection had been made. He also seems to have entered a credit in Irwin's account, purporting to be a collection of interest on the same notes. In October, 1907, Crocker committed suicide, and it was not until after this event that his fraud with reference to the transaction now in controversy became known to either plaintiff or defendant. It was then discovered that in October, 1906, Crocker had surrendered the notes to the makers, taking in lieu thereof three other notes for a like aggregate amount, secured by a real estate mortgage. These new notes were drawn payable to the order of Deming, and then, forging thereon the blank indorsement of Deming, Crocker deposited them in Irwin's box, where they were found after Crocker's death. Upon this state of facts the plaintiff, Irwin, began this action in equity, on the theory that his title to the notes purchased from Crocker was superior to that of Deming, and that, as said notes had been wrongfully surrendered by Crocker, he was entitled to have a trust imposed upon the new notes received in place thereof, and that they should be awarded to him as the proceeds of his converted property, or at least that he should be authorized to retain them to be returned to the makers, and thus enable him to recover from said makers on the original notes. In answer to this petition the defendant sets up his own claim to the ownership of the notes, and asks judgment for their possession. On motion of the defendant the issue was transferred for trial to the law side of the calendar, and on this ruling error is assigned.

     The motion should have been overruled. The cause of action stated by the plaintiff is very clearly equitable in character. It is not, as the trial court

1. TRUSTS: equity: jurisdiction: transfer of cause: prejudice.

seems to have thought, a simple action to determine the ownership and right of possession of the three promissory notes found in plaintiff's safety box. He makes no claim to having

purchased these notes which, by the fraudulent manipulation of Crocker, were substituted for the original notes given by the Dysarts. The right of action which he acquired against the Dysarts was upon the original notes, and of course he had no title in law to the substituted notes made payable to Deming, whose indorsement thereon was a forgery. But he does claim that, by reason of all the circumstances as we have hereinbefore stated them, he is entitled in equity to have a trust in his favor impressed upon such substituted notes which are undoubtedly valid as against the makers. The question of plaintiff's right to such relief can be determined only in a court of equity, and the motion to transfer was not well taken. It appears, however, that the cause was tried without a jury, and all the evidence offered by the respective parties was received without objection, and is all contained in the abstract on which the appeal is submitted. The case seems to have been tried on the theory that the issue presented was, in substance, an action in detinue upon the defendant's counterclaim, demanding judgment for possession of the notes, while the matters and things alleged in the petition as a ground for affirmative equitable relief were regarded in the nature of an equitable defense to said counterclaim. Under the record thus made counsel for plaintiff concede that the error in transferring the cause to the law calendar will not work a reversal of the judgment below unless this court, upon a *de novo* consideration of the issues joined and evidence offered in support thereof, shall find that a different result should have been reached. It may be conceded that, the prior sale of the original notes to Deming and the falsity of his indorsement upon the substituted notes being both established, the burden is upon the plaintiff to show facts which in contemplation of law constitute him a good-faith purchaser of the original paper. Does the record so show?

II. Appellee argues that appellant failed to estab-

lish the identity of the notes. We think the objection is not borne out by the record. Plaintiff swears, and he is in no manner contradicted, that his purchase was of three notes of $400 each signed by the Dysarts. The three notes of that description which had already been sold to the appellee were the only Dysart notes in the bank. The juggling which Crocker carried on with the contents of the two safety boxes, the surrender of the notes to the makers, the taking of the substituted notes in appellee's name and their forged indorsement and deposit in the appellant's box, the false credits entered in the accounts of both parties, and the entire category of admitted facts make it very clear that he ' sold the identical paper in both instances, and that the subsequent web of falsehood and deceit was woven to cover up and prevent, if possible, the discovery of his wrong. There is, of course, the naked possibility that Crocker exhibited to appellant three false and forged notes, but there is not the slightest evidence that such was the case. In our judgment a finding that appellant has not established the identity of the notes previously sold to appellee would be against the clear weight of the evidence.

*2. TRUSTS: identity of instruments: evidence.*

III. It is next said, in support of the finding of the trial court, that there is no proof of delivery of the notes by Crocker to appellant. The plaintiff, who is the only living witness of the transaction, swears that the deal took place in the bank where he purchased these notes, with others, from Crocker; that the notes were there present; that he saw the signatures of the makers and the indorsement of the payee; that he paid for the papers by check on the bank, and left them with his other papers in his private box, with authority to Crocker to collect them. This testimony, standing undisputed by an unimpeached witness, compels us to say there is ample proof of the de-

*3. BILLS AND NOTES: delivery: evidence.*

livery. True, the witness does not say in so many words that he took the notes in his own hands, or that he with his own hands placed them in his private box, but such is the natural and reasonable interpretation of his language. But, even if he did no more than examine the instruments as they lay before him upon the bank counter or table, and signify his acceptance of the offer of sale, and then, after paying the price, request the cashier, who was his agent for the purpose of collection, to deposit them in his box, we can conceive of no good reason why that would not be a good delivery. What constitutes delivery is in a large degree dependent upon the intent of the parties. The contents of a private box in a bank or safety deposit vault are in a legal sense in the actual possession of the owner or lessee of the box, even though he have no authority or control over the building or vault in which it is kept. Nor is his possession any less perfect if for the convenience of his business he intrusts a key to the cashier, with authority to remove the papers therein for the purposes of collection. Can there be the slightest doubt that the parties to this transaction intended it as a completed sale and delivery of the notes? They had the subject of the sale before them; they had mutually agreed upon terms; the price was paid and accepted. The notes were there in the power of the appellant to take them and, carry them away if he so desired. Instead of so doing, he either placed them in his private box, or left them for Crocker to deposit there. When the notes were placed in the box there was an actual visible change of possession, although it was in the power of Crocker to abstract or convert them. Indeed, though it is not necessary to go to that extent in this case, if appellant had no private box in the bank, and on making the purchase he had said to Crocker, "I have no safe or convenient place to keep these papers; I wish to leave them with you to care for and collect," and Crocker had accepted the trust—why

would not that have been a perfect delivery, not as against Crocker alone, but as against all mankind, except it be some later victim of Crocker's craft, who might be inveigled into purchasing the notes under circumstances which would bar appellant's claim just as his purchase bars the claim of appellee? The original notes were indorsed in blank by the payee, and were therefore transferable by delivery. Crocker, having them in his possession when he offered them for sale, was presumably the owner, and authorized to transfer a good title thereto by delivery to the appellant or any other good-faith purchaser. Appellant had a legal right to make Crocker his agent to care for and collect the notes, and it would be sacrificing the spirit of the law to idle form to hold that, in order to make a perfect delivery, he must take the papers into his own hands, or put them into his pocket, though he intended to pass them immediately back to Crocker as his bailee. The delivery was precisely such as would ordinarily be made under the circumstances, and there is nothing in connection therewith to indicate that appellant acted otherwise than in good faith. If it was a good delivery as against Crocker and the bank—and this seems to be conceded—no good reason can be assigned why it is not good as against the appellee. Crocker had such an apparent title that he could transfer the notes to an innocent purchaser, whose right to hold and enforce them would be unimpeachable. The appellant, in the absence of any circumstance to give him notice of the fraud upon appellee, had the right to treat Crocker as possessed of full authority to sell the notes, and whatever was sufficient in law to transfer the title from Crocker to him must, of necessity, be of equal efficiency against all other persons, including appellee. Under the undisputed showing of facts the delivery of the notes to the appellant must be held to have been sufficient.

IV. Question is also raised whether plaintiff pur-

chased the notes before maturity. Default in payment of
the notes did not occur until July 1, 1905. Plaintiff tes-

4. SAME: *bona*    tifies that his purchase was made on June
*fide* pur-    13th of that year, and, if this be true, the
chaser: evi-
dence: trusts.    paper had not then been dishonored. As
already suggested, his testimony as to the circumstances of
the transaction is without contradiction by any witness,
for the only other person having actual knowledge of the
facts is dead. But his story is in this respect clear and
unqualified. No circumstances are shown indicating that
his memory is at fault, unless it be the.fact. which is de-
veloped that the check with which he made the payment
was not charged up by Crocker to appellant's bank ac-
count until March, 1906. The check was neither offered
nor called for in evidence, and there is no testimony of
any one as to what date it purported to bear. We do
not think the single meager fact that it was not charged
up to appellant's account until after the notes were dis-
honored is sufficient to overcome his unequivocal testimony
as to the date of the purchase. Moreover, the fact that
appellant, as a man of business dealing in commercial
paper, must have known that he could not safely purchase
dishonored notes without indorsement or guaranty by the
seller is a circumstance sustaining the reasonableness of
his assertion that he received them before their maturity;
and, in the absence of any showing which casts serious
doubt upon the correctness of his testimony, we think it
should be accepted as true. Certainly the unverified books
of Crocker, who during this period, and until he sought
rest in a suicide's grave, was shifting securities and falsi-
fying his records in a desperate struggle to avoid exposure
of his wrongdoing, are of very little value in determining
the true date of the transaction. Still further, this entry
does not purport to state or show the date of the pur-
chase of the notes, but only the date when Crocker charged
up a check the date of which is not noted. In his troubles

he may have neglected to make the charge at the time of the transaction, or he may have had some ulterior purpose in withholding the record from the books. Indeed it is not difficult to conceive that, having received checks from two different customers for the same notes, he might refrain from entering up the last check received until the lapse of a few months had lessened the prospect that his duplicity would be discovered. The case presented is one in which neither party is chargeable with any wrongful act or omission toward the other, yet one of them must suffer because of the fraud of their common agent. If within its power the court would gladly avoid that result by relieving both, or by distributing the loss between them, but such relief is not within our jurisdiction to administer. Under the well-established rules of the law by which even a thief of negotiable paper which is transferable by delivery may give an innocent purchaser good title thereto against the true owner, the appellant has a legal advantage of which, if insisted upon, the courts can not deprive him.

It follows from what we have said that the judgment below must be reversed. We think, however, there should be no order for a new trial. Although under the erroneous order of the trial court the case was docketed as a law action, yet it was tried in substantial accordance with our practice in equitable proceedings. The entire record is before us. There is no suggestion that the evidence is not as full and complete as it could be made if tried again. The pleadings are sufficient to sustain the appellant's prayer for equitable relief. As the legal owner of the original notes for which the other notes were substituted without his authority, he is entitled to have the latter impressed with a trust in his favor and be authorized to retain possession and make collection thereof. Decree to that effect may be entered in this court at appellant's election, within thirty days from the filing of

this opinion; otherwise the cause will be remanded for like decree in the district court.—*Reversed.*